# Exhibit 2

**ELECTRONICALLY FILED**
**5/29/2024 1:43 PM**
**Kern County Superior Court**
**By Julia Barrera, Deputy**

1  Neama Rahmani (State Bar No. 223819)
    *efilings@westcoasttriallawyers.com*
2  Ronald L. Zambrano (State Bar No. 255613)
    *ron@westcoasttriallawyers.com*
3  Ashley J. Garay (State Bar No. 318131)
    *ashleyg@westcoasttriallawyers.com*
4  WEST COAST TRIAL LAWYERS, APLC
5  1147 South Hope Street
    Los Angeles, California 90015
6  Telephone: (213) 927-3700
7  Facsimile: (213) 927-3701

8  Attorneys for Plaintiff,
    JANE DOE
9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                       FOR THE COUNTY OF KERN

12

13  JANE DOE, an Individual,                Case No.:   BCV-24-101783

14              Plaintiff,                  **COMPLAINT FOR DAMAGES**

15         v.                               1)  HOSTILE WORK ENVIRONMENT SEXUAL
16                                              HARASSMENT;

17  FLYERS ENERGY, LLC, a California Limited    2)  FAILURE TO PREVENT AND REMEDY
18  Liability Company; JAMES GERARD                HARASSMENT;
    PEDERSON, as an Individual, and DOES 1
19  through 10, inclusive,                   3)  ASSAULT & BATTERY;

20                                           4)  VIOLATION OF CIVIL CODE §§ 340.16 &
            Defendants.                          1708.5; AND
21
22                                           5)  NEGLIGENT HIRING, TRAINING AND/OR
                                                 SUPERVISION.
23

24                                           **DEMAND FOR JURY TRIAL**

25

26

27

28

                                    1
                    COMPLAINT AND DEMAND FOR JURY TRIAL

1    Plaintiff, JANE DOE (hereinafter, "Plaintiff" or "DOE"), an Individual, in her complaint

2    against Defendants, FLYERS ENERGY, LLC, a California Limited Liability Company (hereinafter,

3    "FLYERS ENERGY") and JAMES GERARD PEDERSON (hereinafter, "PEDERSON"),

4    (collectively referred to as "Defendants"), respectfully alleges, avers, and complains, as follows:

6                              **INTRODUCTION**

8    1.  This is an action brought by the Plaintiff, DOE, pursuant to California statutory, decision, and

9        regulatory laws. Plaintiff was an employee of Defendant, FLYERS ENERGY, at all times herein

10       mentioned. Defendant PETERSON was the Vice President of Sales at FLYERS ENERGY.

12   2.  Plaintiff alleges that California statutory, decisional, and regulatory laws prohibit the conduct by

13       Defendants herein alleged, and therefore Plaintiff is entitled to monetary relief on the basis that

14       Defendants violated such statutes, decisional law, and regulations.

16                          **JURISDICTION AND VENUE**

18   3.  Jurisdiction is proper in this court by virtue of the California statutes, decisional law, and

19       regulations, and the local rules under the Kern County Superior Court Rules.

21   4.  Venue in this Court is also proper under the venue provision of the Fair Employment and Housing

22       Act in that Plaintiff is a resident of the City of Bakersfield, County of Kern, State of California.

24                              **PARTIES**

26   5.  Plaintiff DOE is, and at all relevant times herein mentioned was, an individual residing in the

27       County of Kern, within the state of California.

28   //

---

2

COMPLAINT AND DEMAND FOR JURY TRIAL

6.  Defendant FLEYERS ENERGY is, and at all times herein mentioned has been, a California Limited Liability Company with the capacity to sue and be sued, and doing business, with a principal place of business located at 2360 Lindbergh Street, Auburn, California, 95602.

7.  Individual Defendant PEDERSON, at all times herein mentioned, was the Vice President of Sales of FLYERS ENERGEY. Defendant PEDERSON is, and at all times herein mentioned, has been an individual with the capacity to sue and to be sued, residing in city of Seattle, State of Washington.

8.  The true names and capacities of the Defendants named herein as Does 1 through 10, inclusive, whether individual, corporate, partnership, association, or otherwise, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names. Plaintiff will request leave of court to amend this Complaint to allege their true names and capacities at such time as they are ascertained.

## **FACTUAL ALLEGATIONS**

9.  In or around September of 2019, Plaintiff DOE, a female, became employed by FLYERS ENERGY as an Account Manager.

10. Plaintiff worked remotely approximately two (2) out of five (5) days a week. As part of her remote work, Plaintiff was required to attend virtual meetings and virtual events.

11. During Plaintiff's first virtual sales meeting, she was introduced to Defendant PEDERSON, the Vice President of Sales at FLYERS ENERGY. After their introduction, Plaintiff interacted with PEDERSON virtually, once a month, as PEDERSON led the monthly sales meetings.

//

3

COMPLAINT AND DEMAND FOR JURY TRIAL

*Plaintiff's Sexual Assault on the Night of the FLYERS ENERGY Team-Building Event*

12. On or about October 18, 2022, Plaintiff was required to attend a team-building event for FLYERS ENERGY in Auburn, California. The event was scheduled to end late in the evening; therefore, Plaintiff rented a hotel room at the Holiday Inn located in Auburn, California.

13. The FLYERS ENERGY team-building event was located at the "Auburn Axe Throwing," a bar that also contained axe throwing exercises.

14. At the event, Plaintiff met PEDERSON in person. Plaintiff was immediately repulsed by PEDERSON, as PEDERSON made physical advances toward Plaintiff by touching her lower back while she was engaging in a conversation with her colleagues. Plaintiff immediately redirected PEDERSON's hand away from her lower back.

15. Later on in the night, Plaintiff was engaging in a conversation with her colleague, Chris French (hereinafter "French"), when PEDERSON attempted to isolate Plaintiff by physically separating her from French.

16. At approximately 8:00 p.m. on that same night, Plaintiff began to feel lightheaded. Plaintiff did not understand why she was feeling lightheaded, as she only drank two (2) orders of a beer known as "1-2 Punch," which Plaintiff recalls being the lowest alcohol option on the menu. Nevertheless, Plaintiff felt herself getting weaker and unable to remain conscious.

17. PEDERSON offered to drive Plaintiff to her hotel.

18. Plaintiff found herself in the back seat of PEDERSON's car, along with two other FLYERS ENERGY employees, Ariel Rivera (hereinafter "Rivera") and Tito (Last Name Unknown) (hereinafter "Tito").

19. Plaintiff lost consciousness while she was sitting in the back of PEDESON's car. She was awakened by PEDERSON pulling her arm and dragging her out of his car. When she awoke, she realized that Rivera and Tito were no longer with them.

20. Plaintiff assumed that PEDERSON had taken her to the Holiday Inn where Plaintiff was staying. However, PEDERSON had taken Plaintiff to the Best Western Hotel, which is the hotel where PEDERSON was staying on that night.

21. After arriving at the Best Western, Plaintiff came in and out of consciousness.

22. Plaintiff remembers regaining consciousness when PEDERSON was pulling her up the stairs of the Best Western. In fact, PEDERSON pulled Plaintiff with such force that he bruised Plaintiff's arm.

23. After being pulled up the stairs, Plaintiff regained consciousness by the pain of PEDERSON grabbing her bare breast while he was naked and on top of her. Plaintiff was nursing her newborn infant at the time, therefore when PEDERSON grabbed her breast, it caused her great pain.

24. Plaintiff told PEDERSON to stop and attempted to push PEDERSON off her. However, Plaintiff was unable to move, as PEDERSON had pinned her down and continued to insert his fingers inside Plaintiff's genitalia.

25. Plaintiff regained consciousness a second time when she noticed her phone light turn on. Plaintiff was in a completely dark room, therefore the light from her phone brightened the room. It was later determined that Plaintiff's husband had tracked Plaintiff's phone and was calling to inquire about why Plaintiff was not at her hotel.

//
//

COMPLAINT AND DEMAND FOR JURY TRIAL

26. After she awoke the second time, Plaintiff began to beg PEDERSON to stop, but PEDERSON continued to rape Plaintiff while she was in and out of consciousness.

27. The last thing that Plaintiff recalled was waking up in her hotel room at the Holiday Inn. She had no recollection of how she arrived back at her hotel.

28. On October 19, 2022, the morning after Plaintiff was raped, Plaintiff contacted the Placer County Police Department and made a police report about PEDERSON.

29. The Placer County Police Department transported Plaintiff to the Sutter Auburn Faith Hospital, where Plaintiff obtained a rape kit.

### The Police Investigation into Plaintiff's Rape

30. The Placer County Police Department created an incident report outlining the aforementioned facts.

31. An investigating officer by the name of Alisha Stater (hereinafter "Officer Slater") contacted the owner and manager of the Auburn Axe Throwing business, James Edwards (hereinafter "Edwards"), to inquire about whether the business saved security camera footage from the night of the sexual assault.

32. After Officer Slater informed Edwards that he was searching for footage from October 18, 2022, but before giving Edwards any additional information, Edwards immediately asked if the investigation was regarding a woman with Plaintiff's physical features.

33. Officer Slater confirmed that it was regarding Plaintiff, and Edwards explained that he felt that on the night of October 18, 2022, something might happen to Plaintiff because her interaction

COMPLAINT AND DEMAND FOR JURY TRIAL

1    with her colleagues "seemed out of balance."

2

3    34. The Placer County Police Department continued an ongoing investigation into PEDERSON and

4        the sexual assault that occurred on the night of October 18, 2022.

5

6              *FLYER ENERGY'S Response to Plaintiff's Complaint about PEDERSON*

7

8    35. The thought of seeing PEDERSON again, whether in person or virtually, terrified Plaintiff.

9

10   36. Therefore, toward the end of October 2022, Plaintiff informed the Human Resources (HR)

11       Representative of FLYERS ENERGY, Sienna (Last Name Unknown) (hereinafter "Sienna"),

12       about PEDERSON sexually assaulting and raping her on the night of the FLYER ENERGY'S

13       team-building event.

14

15   37. Sienna responded to Plaintiff's complaint by lessening the severity of the incident. Sienna stated,

16       "Oh, it's okay, just get back to work." Sienna went on to ask Plaintiff, "You're coming back to

17       work tomorrow, right?" Then, when Plaintiff stated that she may need to take a pregnancy test,

18       Sienna stated that Plaintiff is "fine" and "is not pregnant."

19

20   38. Plaintiff was utterly distressed by what PEDERSON had done to her and by the way FLYERS

21       ENERGEY responded to her complaints. Plaintiff began to experience symptoms of anxiety and

22       suicidal thoughts; therefore, Plaintiff's doctor placed her on medical leave.

23

24   39. On November 8, 2022, Plaintiff was informed that PEDERSON was terminated from FLYERS

25       ENERGY for refusing to make a statement about Plaintiff.

26

27   40. As of filing this complaint, Plaintiff continues to suffer from anxiety and suicidal thoughts. As a

28       result of her symptoms, Plaintiff has been unable to work, and her doctor continues to extend her

---

7

1    unpaid medical leave.

2

3    41. Prior to filing this complaint, Plaintiff fulfilled any legal requirement or exhausted any

4    administrative remedy imposed on her by having filed the substance of the claims alleged herein

5    with the California Civil Rights Department and received a Right to Sue Letter, dated February

6    29, 2024. Plaintiff has therefore substantially complied with all requirements for the filing of this

7    Complaint and has timely exhausted her administrative remedies.

8

9    **FIRST CAUSE OF ACTION**

10    **Hostile Work Environment Sexual Harassment**

11    **(Plaintiff Against All Defendants)**

12

13    42. Plaintiff incorporates all paragraphs above as though fully set forth herein.

14

15    43. The conduct of Defendant PEDERSON created a hostile work environment for Plaintiff, making

16    the conditions of Plaintiff's employment intolerable in direct contravention of various statutes

17    and state law decisions, including but not limited to, California Government Code § 12940(h) and

18    (j). Plaintiff was subjected to a hostile work environment due to, including but not limited to,

19    PEDERSON's inappropriate touching and rape. The harassment by PEDERSON, about which

20    Plaintiff complained, was based on Plaintiff's sex/gender.

21

22    44. In or around September of 2019, Plaintiff DOE, a female, became employed by FLYERS

23    ENERGY as an Account Manager.

24

25    45. Plaintiff worked remotely approximately two (2) out of five (5) days a week. As part of her remote

26    work, Plaintiff was required to attend virtual meetings and virtual events.

27

28    46. During Plaintiff's first virtual sales meeting, she was introduced to Defendant PEDERSON, the

Vice President of Sales at FLYERS ENERGY. After their introduction, Plaintiff interacted with PEDERSON virtually, once a month, as PEDERSON led the monthly sales meetings.

***Plaintiff's Sexual Assaulted on the Night of the FLYERS ENERGY Team-Building Event***

47. On or about October 18, 2022, Plaintiff was required to attend a team-building event for FLYERS ENERGY in Auburn, California. The event was scheduled to end late in the evening; therefore, Plaintiff rented a hotel room at the Holiday Inn located in Auburn, California.

48. The FLYERS ENERGY team-building event was located at the "Auburn Axe Throwing," a bar that also contained axe throwing exercises.

49. At the event, Plaintiff met PEDERSON in person. Plaintiff was immediately repulsed by PEDERSON, as PEDERSON made physical advances toward Plaintiff by touching her lower back while she was engaging in a conversation with her colleagues. Plaintiff immediately redirected PEDERSON's hand away from her lower back.

50. Later on in the night, Plaintiff was engaging in a conversation with her colleague, French, when PEDERSON attempted to isolate Plaintiff by physically separating her from French.

51. At approximately 8:00 p.m. on that same night, Plaintiff began to feel lightheaded. Plaintiff did not understand why she was feeling lightheaded, as she only drank two (2) orders of a beer known as "1-2 Punch," which Plaintiff recalls being the lowest alcohol option on the menu. Nevertheless, Plaintiff felt herself getting weaker and unable to remain conscious.

52. PEDERSON offered to drive Plaintiff to her hotel.

53. Plaintiff found herself in the back seat of PEDERSON's car, along with two other FLYERS

COMPLAINT AND DEMAND FOR JURY TRIAL

ENERGY employees, Rivera and Tito.

54. Plaintiff lost consciousness while she was sitting in the back of PEDESON's car. She was awakened by PEDERSON pulling her arm and dragging her out of his car. When she awoke, she realized that Rivera and Tito were no longer with them.

55. Plaintiff assumed that PEDERSON had taken her to the Holiday Inn where Plaintiff was staying. However, PEDERSON had taken Plaintiff to the Best Western Hotel, which is the hotel where PEDERSON was staying on that night.

56. After arriving at the Best Western, Plaintiff came in and out of consciousness.

57. Plaintiff remembers regaining consciousness when PEDERSON was pulling her up the stairs of the Best Western. In fact, PEDERSON pulled Plaintiff with such force that he bruised Plaintiff's arm.

58. After being pulled up the stairs, Plaintiff regained consciousness by the pain of PEDERSON grabbing her bare breast while he was naked and on top of her. Plaintiff was nursing her newborn infant at the time, therefore when PEDERSON grabbed her breast, it caused her great pain.

59. Plaintiff told PEDERSON to stop and attempted to push PEDERSON off of her. However, Plaintiff was unable to move, as PEDERSON had pinned her down and continued to insert his fingers into Plaintiff's genitalia.

60. Plaintiff regained consciousness a second time when she noticed her phone light turn on. Plaintiff was in a completely dark room, therefore the light from her phone brightened the room. It was later determined that Plaintiff's husband had tracked Plaintiff's phone and was calling to inquire about why Plaintiff was not at her hotel.

COMPLAINT AND DEMAND FOR JURY TRIAL

61. After she awoke the second time, Plaintiff began to beg PEDERSON to stop, but PEDERSON continued to rape Plaintiff while she was in and out of consciousness.

62. The last thing that Plaintiff recalled was waking up in her hotel room at the Holiday Inn. She had no recollection of how she arrived back at her hotel.

63. On October 19, 2022, the morning after Plaintiff was sexually assaulted, Plaintiff contacted the Placer County Police Department and made a police report about PEDERSON.

64. The Placer County Police Department transported Plaintiff to the Sutter Auburn Faith Hospital, where Plaintiff obtained a rape kit.

### *FLYER ENERGY'S Response to Plaintiff's Complaint about PEDERSON*

65. The thought of seeing PEDERSON again, whether in person or virtually, terrified Plaintiff.

66. Therefore, toward the end of October 2022, Plaintiff informed the HR Representative of FLYERS ENERGY, Sienna, about PEDERSON sexually assaulting and raping her on the night of the FLYER ENERGY'S team-building event.

67. Sienna responded to Plaintiff's complaint by lessening the severity of the incident. Sienna stated, "Oh, it's okay, just get back to work." Sienna went on to ask Plaintiff, "You're coming back to work tomorrow, right?" Then, when Plaintiff stated that she may need to take a pregnancy test, Sienna stated that Plaintiff is "fine" and "is not pregnant."

68. Plaintiff was utterly distressed by what PEDERSON had done to her and by the way that FLYERS ENERGEY responded to her complaints. Plaintiff began to experience symptoms of anxiety and suicidal thoughts; therefore, Plaintiff's doctor placed her on medical leave.

69. On November 8, 2022, Plaintiff was informed that PEDERSON was terminated from FLYERS ENERGY for refusing to make a statement about Plaintiff.

70. As of filing this complaint, Plaintiff continues to suffer from anxiety and suicidal thoughts. As a result of her symptoms, Plaintiff has been unable to work, and her doctor continues to extend her unpaid medical leave.

71. The harassment by PEDERSON was so severe and pervasive that it altered the terms and conditions of Plaintiff's employment, creating a hostile, abusive, work environment and making her working conditions intolerable. Said harassment was sufficiently extreme to amount to a change in the terms and conditions of Plaintiff's employment.

72. As a direct and legal result of Defendants' conduct, and each of them, Plaintiff has suffered and continues to suffer general, consequential, and special damages, including but not limited to, substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorneys' fees, all to her damage in an amount according to proof.

73. As a proximate result of Defendants' conduct, Plaintiff also suffered severe emotional distress, anxiety, pain and suffering, physical injuries, physical sickness, medical expenses, future medical expenses, attorneys' fees, and other damages to be determined at trial in an amount according to proof.

74. Said actions justify the imposition of punitive damages in that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. Based upon the foregoing, Plaintiff is entitled to recover punitive damages from Defendants, and each of them, in an amount according to proof.

**SECOND CAUSE OF ACTION**

**Failure to Remedy and Prevent Harassment in Violation of FEHA**

**(Plaintiff Against Defendant FLYERS ENERGY and DOES 1 through 10)**

75.  Plaintiff incorporates all paragraphs above as though fully set forth herein.

76.  Plaintiff was subjected to harassment based on her sex by the Vice President of Sales at FLERYS ENERGY, PEDERSON. Such conduct is prohibited by the Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940 (j) and (k).

77.  Under the FEHA, an employer is strictly liable for the harassing conduct of its agents and supervisors. (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590). FEHA also requires employers to take all reasonable steps necessary to prevent unlawful harassment from occurring. (Gov. Code. § 12940(j) and (k)).

78.  In or around September of 2019, Plaintiff DOE, a female, became employed by FLYERS ENERGY as an Account Manager.

79.  Plaintiff worked remotely approximately two (2) out of five (5) days a week. As part of her remote work, Plaintiff was required to attend virtual meetings and virtual events.

80.  During Plaintiff's first virtual sales meeting, she was introduced to Defendant PEDERSON, the Vice President of Sales at FLYERS ENERGY. After their introduction, Plaintiff interacted with PEDERSON virtually, once a month, as PEDERSON led the monthly sales meetings.

//

//

//

COMPLAINT AND DEMAND FOR JURY TRIAL

***Plaintiff's Sexual Assaulted on the Night of the FLYERS ENERGY Team-Building Event***

81. On or about October 18, 2022, Plaintiff was required to attend a team-building event for FLYERS ENERGY in Auburn, California. The event was scheduled to end late in the evening; therefore, Plaintiff rented a hotel room at the Holiday Inn located in Auburn, California.

82. The FLYERS ENERGY team-building event was located at the "Auburn Axe Throwing," a bar that also contained axe throwing exercises.

83. At the event, Plaintiff met PEDERSON in person. Plaintiff was immediately repulsed by PEDERSON, as PEDERSON made physical advances toward Plaintiff by touching her lower back while she was engaging in a conversation with her colleagues. Plaintiff immediately redirected PEDERSON's hand away from her lower back.

84. Later on in the night, Plaintiff was engaging in a conversation with her colleague, French, when PEDERSON attempted to isolate Plaintiff by physically separating her from French.

85. At approximately 8:00 p.m. on that same night, Plaintiff began to feel lightheaded. Plaintiff did not understand why she was feeling lightheaded, as she only drank two (2) orders of a beer known as "1-2 Punch," which Plaintiff recalls being the lowest alcohol option on the menu. Nevertheless, Plaintiff felt herself getting weaker and unable to remain conscious.

86. PEDERSON offered to drive Plaintiff to her hotel.

87. Plaintiff found herself in the back seat of PEDERSON's car, along with two other FLYERS ENERGY employees, Rivera and Tito.

//

//

COMPLAINT AND DEMAND FOR JURY TRIAL

88. Plaintiff lost consciousness while she was sitting in the back of PEDESON's car. She was awakened by PEDERSON pulling her arm and dragging her out of his car. When she awoke, she realized that Rivera and Tito were no longer with them.

89. Plaintiff assumed that PEDERSON had taken her to the Holiday Inn where Plaintiff was staying. However, PEDERSON had taken Plaintiff to the Best Western Hotel, which is the hotel where PEDERSON was staying on that night.

90. After arriving at the Best Western, Plaintiff came in and out of consciousness.

91. Plaintiff remembers regaining consciousness when PEDERSON was pulling her up the stairs of the Best Western. In fact, PEDERSON pulled Plaintiff with such force that he bruised Plaintiff's arm.

92. After being pulled up the stairs, Plaintiff regained consciousness by the pain of PEDERSON grabbing her bare breast while he was naked and on top of her. Plaintiff was nursing her newborn infant at the time, therefore when PEDERSON grabbed her breast, it caused her great pain.

93. Plaintiff told PEDERSON to stop and attempted to push PEDERSON off of her. However, Plaintiff was unable to move, as PEDERSON had pinned her down and continued to insert his fingers into Plaintiff's genitalia.

94. Plaintiff regained consciousness a second time when she noticed her phone light turn on. Plaintiff was in a completely dark room, therefore the light from her phone brightened the room. It was later determined that Plaintiff's husband had tracked Plaintiff's phone and was calling to inquire about why Plaintiff was not at her hotel.

95. After she awoke the second time, Plaintiff began to beg PEDERSON to stop, but PEDERSON

1    continued to rape Plaintiff while she was in and out of consciousness.

2

3    96.  The last thing that Plaintiff recalled was waking up in her hotel room at the Holiday Inn. She had

4    no recollection of how she arrived back at her hotel.

5

6    97.  On October 19, 2022, the morning after Plaintiff was sexually assaulted, Plaintiff contacted the

7    Placer County Police Department and made a police report about PEDERSON.

8

9    98.  The Placer County Police Department transported Plaintiff to the Sutter Auburn Faith Hospital,

10    where Plaintiff obtained a rape kit.

11

12    ***FLYER ENERGY'S Response to Plaintiff's Complaint about PEDERSON***

13

14    99.  The thought of seeing PEDERSON again, whether in person or virtually, terrified Plaintiff.

15

16    100.  Therefore, toward the end of October 2022, Plaintiff informed the HR Representative of

17    FLYERS ENERGY, Sienna, about PEDERSON sexually assaulting and raping her on the night

18    of the FLYER ENERGY'S team-building event.

19

20    101.  Sienna responded to Plaintiff's complaint by lessening the severity of the incident. Sienna stated,

21    "Oh, it's okay, just get back to work." Sienna went on to ask Plaintiff, "You're coming back to

22    work tomorrow, right?" Then, when Plaintiff stated that she may need to take a pregnancy test,

23    Sienna stated that Plaintiff is "fine" and "is not pregnant."

24

25    102.  Plaintiff was utterly distressed by what PEDERSON had done to her and by the way that

26    FLYERS ENERGEY responded to her complaints. Plaintiff began to experience symptoms of

27    anxiety and   suicidal thoughts; therefore, Plaintiff's doctor placed her on medical leave.

28

103. On November 8, 2022, Plaintiff was informed that PEDERSON was terminated from FLYERS ENERGY for refusing to make a statement about Plaintiff.

104. As of filing this complaint, Plaintiff continues to suffer from anxiety and suicidal thoughts. As a result of her symptoms, Plaintiff has been unable to work, and her doctor continues to extend her unpaid medical leave.

105. Defendant FLYERS ENERGY knew of the harassing conduct and the actions of PEDERSON because Plaintiff complained to Sienna, the HR representative, about PEDERSON's conduct. However, FYLERS ENERGY failed to take immediate and appropriate corrective action to stop the harassment. Instead, Sienna belittled the incident by stating that it was "okay."

106. As a direct and legal result of Defendant FLYER ENERGY's conduct, Plaintiff has suffered and continues to suffer general, consequential, and special damages, including but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorneys' fees, all to her damage in an amount according to proof.

107. As a proximate result of Defendants' conduct, Plaintiff also suffered severe emotional distress, anxiety, pain and suffering, physical injuries, physical sickness, medical expenses, future medical expenses, attorneys' fees, and other damages to be determined at trial according to proof.

108. Said actions justify the imposition of punitive damages in that Defendant FLYERS ENERGY committed the acts alleged herein maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. Defendant FLYERS ENERGY had notice and knowledge that PEDESON had sexually assaulted Plaintiff but failed to take reasonable steps to prevent such conduct. Based upon the foregoing, Plaintiff is entitled to recover punitive damages

1    from Defendants, and each of them, in an amount according to proof.

2    **THIRD CAUSE OF ACTION**

3    **Assault and Battery**

4    **(Plaintiff Against Defendant PEDERSON and DOES 1 through 10)**

6    109.    Plaintiff incorporates all paragraphs above as though fully set forth herein.

8    110.    On or about October 18, 2022, Plaintiff was required to attend a team-building event for

9        FLYERS ENERGY in Auburn, California. The event was scheduled to end late in the evening;

10        therefore, Plaintiff rented a hotel room at the Holiday Inn located in Auburn, California.

12    111.    The FLYERS ENERGY team-building event was located at the "Auburn Axe Throwing," a bar

13        that also contained axe throwing exercises.

15    112.    At the event, Plaintiff met PEDERSON in person. Plaintiff was immediately repulsed by

16        PEDERSON, as PEDERSON made physical advances toward Plaintiff by touching her lower

17        back while she was engaging in a conversation with her colleagues. Plaintiff immediately

18        redirected PEDERSON's hand away from her lower back.

20    113.    Later on in the night, Plaintiff was engaging in a conversation with her colleague, French, when

21        PEDERSON attempted to isolate Plaintiff by physically separating her from French.

23    114.    At approximately 8:00 p.m. on that same night, Plaintiff began to feel lightheaded. Plaintiff did

24        not understand why she was feeling lightheaded, as she only drank two (2) orders of a beer

25        known as "1-2 Punch," which Plaintiff recalls being the lowest alcohol option on the menu.

26        Nevertheless, Plaintiff felt herself getting weaker and unable to remain conscious.

28    115.    PEDERSON offered to drive Plaintiff to her hotel.

18

COMPLAINT AND DEMAND FOR JURY TRIAL

116. Plaintiff found herself in the back seat of PEDERSON's car, along with two other FLYERS ENERGY employees, Rivera and Tito.

117. Plaintiff lost consciousness while she was sitting in the back of PEDESON's car. She was awakened by PEDERSON pulling her arm and dragging her out of his car. When she awoke, she realized that Rivera and Tito were no longer with them.

118. Plaintiff assumed that PEDERSON had taken her to the Holiday Inn where Plaintiff was staying. However, PEDERSON had taken Plaintiff to the Best Western Hotel, which is the hotel where PEDERSON was staying on that night.

119. After arriving at the Best Western, Plaintiff came in and out of consciousness.

120. Plaintiff remembers regaining consciousness when PEDERSON was pulling her up the stairs of the Best Western. In fact, PEDERSON pulled Plaintiff with such force that he bruised Plaintiff's arm.

121. After being pulled up the stairs, Plaintiff regained consciousness by the pain of PEDERSON grabbing her bare breast while he was naked and on top of her. Plaintiff was nursing her newborn infant at the time, therefore when PEDERSON grabbed her breast, it caused her great pain.

122. Plaintiff told PEDERSON to stop and attempted to push PEDERSON off of her. However, Plaintiff was unable to move, as PEDERSON had pinned her down and continued to insert his fingers into Plaintiff's genitalia.

123. Plaintiff regained consciousness a second time when she noticed her phone light turn on. Plaintiff was in a completely dark room, therefore the light from her phone brightened the room.

It was later determined that Plaintiff's husband had tracked Plaintiff's phone and was calling to inquire about why Plaintiff was not at her hotel.

124. After she awoke the second time, Plaintiff began to beg PEDERSON to stop, but PEDERSON continued to rape Plaintiff while she was in and out of consciousness.

125. The last thing that Plaintiff recalled was waking up in her hotel room at the Holiday Inn. She had no recollection of how she arrived back at her hotel.

126. On October 19, 2022, the morning after Plaintiff was sexually assaulted, Plaintiff contacted the Placer County Police Department and made a police report about PEDERSON.

127. The Placer County Police Department transported Plaintiff to the Sutter Auburn Faith Hospital, where Plaintiff obtained a rape kit.

128. At no time did Plaintiff consent to any of alleged above acts of PEDERSON.

129. PEDERSON committed these acts during the course and scope of his capacity as a vice president and manager of FLYERS ENERGY.

130. In doing the acts as alleged above, PEDERSON intended to cause or to place Plaintiff in apprehension of offensive or harmful contact with Plaintiff's person.

131. In doing the acts as alleged above, PEDERSON also acted with the intent to make a contact with Plaintiff's person.

132. As a result of PEDERSON's acts as alleged above, Plaintiff, in fact, was place in great apprehension of offensive and harmful contact.

COMPLAINT AND DEMAND FOR JURY TRIAL

133.    As a proximate result of the acts of Defendant PEDERSON as alleged above, Plaintiff was hurt and injured in her health, strength, and activity sustaining injury to her person, all of which have caused, and continue to cause, Plaintiff great mental, physical, and nervous pain and suffering, including humiliation and embarrassment. As a result of these injuries, Plaintiff has suffered general damages.

134.    Plaintiff is informed and believes that the aforesaid acts directed towards Plaintiff were carried out with a conscious disregard of Plaintiff's rights to be free from tortious behavior, such as to constitute oppression, fraud and/or malice pursuant to California Civil Code § 3294, entitling Plaintiff to punitive damages in an amount appropriate to punish and deter Defendant PEDERSON from engaging in this type of behavior.

## **FOURTH CAUSE OF ACTION**

### **Violation of Civil Code §§ 340.16 & 1708.5**

### **Plaintiff Against All Defendants**

135.    Plaintiff incorporates all paragraphs above as though fully set forth herein.

136.    Civil Code § 1708.5 makes it unlawful to intentionally make sexually offensive contact with the intent to make offensive contact with another person without their consent. Civil Code § 340.16 provides that civil action for recovery of damages as a result of sexual assault may be brought within ten (10) years from the date of the act or attempted act.

***Plaintiff's Sexual Assaulted on the Night of the FLYERS ENERGY Team-Building Event***

137.    On or about October 18, 2022, Plaintiff was required to attend a team-building event for FLYERS ENERGY in Auburn, California. The event was scheduled to end late in the evening; therefore, Plaintiff rented a hotel room at the Holiday Inn located in Auburn, California.

COMPLAINT AND DEMAND FOR JURY TRIAL

138. The FLYERS ENERGY team-building event was located at the "Auburn Axe Throwing," a bar that also contained axe throwing exercises.

139. At the event, Plaintiff met PEDERSON in person. Plaintiff was immediately repulsed by PEDERSON, as PEDERSON made physical advances toward Plaintiff by touching her lower back while she was engaging in a conversation with her colleagues. Plaintiff immediately redirected PEDERSON's hand away from her lower back.

140. Later on in the night, Plaintiff was engaging in a conversation with her colleague, French, when PEDERSON attempted to isolate Plaintiff by physically separating her from French.

141. At approximately 8:00 p.m. on that same night, Plaintiff began to feel lightheaded. Plaintiff did not understand why she was feeling lightheaded, as she only drank two (2) orders of a beer known as "1-2 Punch," which Plaintiff recalls being the lowest alcohol option on the menu. Nevertheless, Plaintiff felt herself getting weaker and unable to remain conscious.

142. PEDERSON offered to drive Plaintiff to her hotel.

143. Plaintiff found herself in the back seat of PEDERSON's car, along with two other FLYERS ENERGY employees, Rivera and Tito.

144. Plaintiff lost consciousness while she was sitting in the back of PEDESON's car. She was awakened by PEDERSON pulling her arm and dragging her out of his car. When she awoke, she realized that Rivera and Tito were no longer with them.

145. Plaintiff assumed that PEDERSON had taken her to the Holiday Inn where Plaintiff was staying. However, PEDERSON had taken Plaintiff to the Best Western Hotel, which is the hotel where PEDERSON was staying on that night.

146.  After arriving at the Best Western, Plaintiff came in and out of consciousness.

147.  Plaintiff remembers regaining consciousness when PEDERSON was pulling her up the stairs of the Best Western. In fact, PEDERSON pulled Plaintiff with such force that he bruised Plaintiff's arm.

148.  After being pulled up the stairs, Plaintiff regained consciousness by the pain of PEDERSON grabbing her bare breast while he was naked and on top of her. Plaintiff was nursing her newborn infant at the time, therefore when PEDERSON grabbed her breast, it caused her great pain.

149.  Plaintiff told PEDERSON to stop and attempted to push PEDERSON off of her. However, Plaintiff was unable to move, as PEDERSON had pinned her down and continued to insert his fingers into Plaintiff's genitalia.

150.  Plaintiff regained consciousness a second time when she noticed her phone light turn on. Plaintiff was in a completely dark room, therefore the light from her phone brightened the room. It was later determined that Plaintiff's husband had tracked Plaintiff's phone and was calling to inquire about why Plaintiff was not at her hotel.

151.  After she awoke the second time, Plaintiff began to beg PEDERSON to stop, but PEDERSON continued to rape Plaintiff while she was in and out of consciousness.

152.  The last thing that Plaintiff recalled was waking up in her hotel room at the Holiday Inn. She had no recollection of how she arrived back at her hotel.

153.  On October 19, 2022, the morning after Plaintiff was sexually assaulted, Plaintiff contacted the Placer County Police Department and made a police report about PEDERSON.

COMPLAINT AND DEMAND FOR JURY TRIAL

154.   The Placer County Police Department transported Plaintiff to the Sutter Auburn Faith Hospital, where Plaintiff obtained a rape kit.

### *FLYER ENERGY'S Response to Plaintiff's Complaint about PEDERSON*

155.   The thought of seeing PEDERSON again, whether in person or virtually, terrified Plaintiff.

156.   Therefore, toward the end of October 2022, Plaintiff informed the HR Representative of FLYERS ENERGY, Sienna, about PEDERSON sexually assaulting and raping her on the night of the FLYER ENERGY'S team-building event.

157.   Sienna responded to Plaintiff's complaint by lessening the severity of the incident. Sienna stated, "Oh, it's okay, just get back to work." Sienna went on to ask Plaintiff, "You're coming back to work tomorrow, right?" Then, when Plaintiff stated that she may need to take a pregnancy test, Sienna stated that Plaintiff is "fine" and "is not pregnant."

158.   Plaintiff was utterly distressed by what PEDERSON had done to her and by the way that FLYERS ENERGEY responded to her complaints. Plaintiff began to experience symptoms of anxiety and  suicidal thoughts; therefore, Plaintiff's doctor placed her on medical leave.

159.   On November 8, 2022, Plaintiff was informed that PEDERSON was terminated from FLYERS ENERGY for refusing to make a statement about Plaintiff.

160.   As of filing this complaint, Plaintiff continues to suffer from anxiety and suicidal thoughts. As a result of her symptoms, Plaintiff has been unable to work, and her doctor continues to extend her unpaid medical leave.

//

//

161.  PEDERSON's conduct was made with the intent to cause offensive contact with an intimate party of Plaintiff's body.

162.  Plaintiff did not consent to the sexually offensive contact.

163.  PEDERSON's sexually offensive contact caused and continues to cause Plaintiff to suffer damage, injury, loss and/or harm. Plaintiff was and still is devasted by PEDERSON violating Plaintiff's intimacy and body. Plaintiff suffered, and continues to suffer, adverse effects to her health directly connected to the trauma caused by PEDERSON on October 18, 2022.

164.  As the October 18, 2022, team-building event was for the benefit and the direction of Defendant FLYERS ENERGY, Plaintiff is informed, believes and thereon alleges that FLYERS ENERGY condoned, enabled and/or aided and abetted the circumstances that led to PEDERSON sexually assaulting Plaintiff while Plaintiff was unconscious during the same event. Thereon, Plaintiff asserts that FLYERS ENERGY is vicariously liable for PEDERSON's conduct as alleged herein.

165.  Said conduct by Defendants justify the imposition of punitive damages since it was against public policy. Defendants acted maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff. Based upon the foregoing, Plaintiff is entitled to recover punitive damages from Defendants and each of them, in an amount according to proof.

//
//
//
//
//
//
//

25
COMPLAINT AND DEMAND FOR JURY TRIAL

**FIFTH CAUSE OF ACTION**

**Negligent Hiring, Training and/or Supervision**

**Plaintiff Against Defendant FLYERS ENERGY and DOES 1 through 10**

166.  Plaintiff incorporates all paragraphs above as though fully set forth herein.

167.  FLYERS ENERGY has a duty to exercise due care in the hiring, training, and supervision of its employees. Defendant PEDERSON was an employee of FLYERS ENERGY.

168.  FLYERS ENERGY knew or had reason to know that PEDERSON was subjecting Plaintiff and/or other female employees of FLYERS ENERGY to inappropriate sexual comments and/or non-consensual sexual conduct.

169.  FLYERS ENERGY knew or had reason to know of PEDERSON's predisposition to engage in non-consensual touching or sex with females at work events or at the least create an environment that was hostile because of their sex by way of inappropriate sexually charged comments and/or touching against women.

170.  FLYERS ENERGY knew or had reason to know of PEDERSON's predisposition, as alleged above herein, and would continue to do so under the scope and course of his employment with FLYERS ENERGY, using his authority to accomplish the same.

171.  FLYERS ENERGY failed to exercise due care in the interviewing, selection, training, and/or supervision of PEDERSON despite knowledge of his predisposition to create sexually hostile work environments at work events that led to non-consensual sexual conduct.

172.  Plaintiff is informed and believes and thereon alleges that at the time of the October 18, 2022, incident in Auburn, California, PEDERSON was a FLYERS ENERGY employee and was

1  acting within the scope of his employment for FLYERS ENERGY.

2

3  173.  FLYER ENERGY's failure to exercise due care in the interviewing, selection, training and

4  supervision of PEDERSON was a substantial factor in causing Plaintiff to suffer serious bodily

5  injury, great mental and/or emotional distress, and ongoing costs for medical treatment as

6  alleged herein. The full amount of damages, both general and special, is not presently known,

7  but exceeds the jurisdictional limits of this court, and will me more fully ascertained by the time

8  of trial.

9

10  **PRAYER**

11

12  1.  For damages according to proof, including unpaid wages, loss of earnings, deferred

13  compensation, and other employment benefits;

14

15  2.  For interest on the amount of unpaid wages, and other employee benefits at the prevailing legal

16  rate;

17

18  3.  For restitution of unpaid wages to Plaintiff and prejudgment interest from the day such amounts

19  were due and payable;

20

21  4.  For general damages, including but not limited to emotional distress, according to proof;

22

23  5.  For other special damages according to proof, including but not limited to reasonable medical

24  expenses

25

26  6.  For punitive damages;

27

28  7.  For costs incurred by Plaintiff, including reasonable attorneys' fees and costs of suit, in obtaining

27

1   the benefits due to Plaintiff and for violations of Plaintiff's civil rights through the Fair

2   Employment & Housing Act and the Labor Code, as set forth above; and

3

4   8.   For such other further relief as the court deems just and proper.

5

6

7

8   Dated: May 29, 2024                     WEST COAST TRIAL LAWYERS, APLC

9

10

11                                          By: _____

12                                          Ronald L. Zambrano, Esq.
                                            Ashley J. Garay, Esq.
13                                          Attorneys for Plaintiff,
                                            JANE DOE

14

15

16                        **DEMAND FOR JURY TRIAL**

17

18   Plaintiff hereby demands trial by jury.

19

20

21   Dated: May 29, 2024                     WEST COAST TRIAL LAWYERS, APLC

22

23

24                                          By: _____

25                                          Ronald L. Zambrano, Esq.
                                            Ashley J. Garay, Esq.
26                                          Attorneys for Plaintiff,
                                            JANE DOE

27

28

---
                                    28