UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA,<br><br>           Plaintiff,<br><br>v.<br><br>JAMES PEDERSON,<br><br>           Defendant. | Case No. 1:24-cv-01299-CDB<br><br>ORDER GRANTING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE<br><br>(Doc. 36)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS<br><br>(Doc. 35)<br><br>**14-DAY OBJECTION PERIOD**<br><br><u>Clerk of the Court to Assign District Judge</u> |

      Plaintiff Safeco Insurance Company of America ("Plaintiff") initiated this action with the filing of a complaint on October 24, 2024, against Defendants James Pederson and Flyers Energy, LLC, as well as pseudonymous Defendant Jane Doe. (Doc. 1). Upon stipulated agreements, the latter two Defendants were dismissed from the action. (Docs. 21-24). Plaintiff seeks declaratory relief that it owes no duty to defend or indemnify Pederson ("Defendant") for a civil action pending in state court in which Pederson is named as a defendant. (*See* Doc. 1).

      Pending before the undersigned is Plaintiff's renewed motion for judgment on the pleadings, filed on March 3, 2025 (Doc. 35), and the accompanying request for judicial notice (Doc.

36). Defendant filed no response and the time to do so has expired.

**I.    BACKGROUND**

Plaintiff filed proof of service upon Defendant of the summons and complaint on November 14, 2024. (Doc. 7). On January 6, 2025, the Court granted the parties' stipulated request to extend Defendant's deadline to respond to the complaint on the proffered grounds that he needed additional time to obtain counsel. (Docs. 11, 12). On January 22, 2025, the Court granted the parties' second stipulated request to extend time given the parties' representation that Defendant had not been able to obtain counsel and intended to proceed pro se. (Docs. 17, 18).

Defendant failed to file an answer by the extended deadline of February 4, 2025. On February 18, 2025, Plaintiff filed a motion for judgment on the pleadings. (Doc. 25). The Court terminated the motion, noting that Plaintiff could not file a motion for judgment on the pleadings prior to the filing of an answer, and directed Plaintiff to apply for entry of default. (Doc. 28). Plaintiff filed a request for entry of default on February 27, 2025. (Doc. 30). The Clerk of the Court entered default the next day (Doc. 31), but immediately afterwards, filed on Defendant's behalf his answer, dated February 4, 2025 (Doc. 33).

Noting that it was unclear whether Defendant's answer comported with Rule 8 of the Federal Rules of Civil Procedure, the Court directed Plaintiff to file a report setting forth its intention to either request the Court to set a scheduling conference, file a motion to strike Defendant's answer, or renew its previous motion for judgment on the pleadings. (Doc. 34). On March 3, 2025, Plaintiff filed the pending renewed motion for judgment on the pleadings and an accompanying request for judicial notice. (Docs. 35, 36). Thereafter, the Court ordered the entry of default to be set aside. (Doc. 37).

The motion for judgment on the pleadings came before the Court for hearing on April 8, 2025; Plaintiff appeared remotely via Zoom through counsel Yevgenia Altman and Defendant likewise appeared remotely on his own behalf. (Doc. 39). During the hearing, the Court directed Plaintiff to file a record corroborating service on Defendant of Plaintiff's motion for judgment on the pleadings. *See id.* Plaintiff filed its notice the same day, attaching emails exchanged between Plaintiff and Defendant which evidence service of the motion on March 3, 2025. (*See* Doc. 40).

## II.     GOVERNING LAW

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, a party may seek judgment on the pleadings "[a]fter the pleadings are closed—but early enough to not delay trial." Fed. R. Civ. P. 12(c). "[P]leadings are closed for the purposes of Rule 12(c) once a complaint and answer have been filed, assuming ... that no counterclaim or cross-claim is made." *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005). Because Defendant filed an answer (Doc. 33), and no counterclaims or cross-claims were made, the pleadings are closed in this action. *Doe*, 419 F.3d at 1061.

A motion for judgment on the pleadings "challenges the legal sufficiency of the opposing party's pleadings and operates in much the same manner as a motion to dismiss under Rule 12(b)(6)." *Morgan v. Cnty. of Yolo*, 436 F. Supp. 2d 1152, 1154–55 (E.D. Cal. Jun. 29, 2006), *aff'd* 277 Fed. Appx. 734 (9th Cir. 2008). *See Dworkin v. Hustler Magazine, Inc.*, 867 F. 2d 1188, 1192 (9th Cir. 1989) (noting a Rule 12(c) motion is "functionally identical" to a motion under Rule 12(b) where the "principal difference" between such motions is the time of filing). Consequently, "the same standard of review" applies to a Rule 12(c) motion. *Chandavong v. Fresno Deputy Sheriff's Assoc.*, 599 F. Supp. 3d 1017, 1020 (E.D. Cal. Apr. 25, 2022) (citing *Gregg v. Dep't of Public Safety*, 870 F.3d 883, 887 (9th Cir. 2017)).

In deciding a motion for judgment on the pleadings, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (explaining the pleading standard under *Iqbal* applies to Rule 12(c) motions, because Rule 12(b) and Rule 12(c) motions are functionally equivalent). Thus, the Court "must accept all factual allegations in the [pleadings] as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint, or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254

(9th Cir. 2013).

To prevail on a Rule 12(c) motion, the moving party bears the burden to demonstrate that (1) "no material issue of fact remains to be resolved" and (2) "he is entitled to judgment as a matter of law." *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984). However, the Court retains the discretion to grant a Rule 12(c) motion with leave to amend, or to grant dismissal rather than enter judgment. *See Pacific W. Grp. v. Real Time Solutions*, 321 Fed. Appx. 566, 569 (9th Cir. 2008); *see also Chandavong*, 599 F. Supp. 3d at 1020 ("[a]lthough Rule 12(c) does not mention leave to amend, courts may grant a Rule 12(c) motion with leave to amend"); *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. Jan. 29, 2004) ("courts have discretion both to grant a Rule 12(c) motion with leave to amend ... and to simply grant dismissal of the action instead of entry of judgment").

**III.   DISCUSSION**

The Court takes the allegations set forth in the complaint (Doc. 1) and answer (Doc. 33) as true for purposes of ruling on this motion, construing them in the light most favorable to Defendant. Plaintiff seeks a declaratory judgment that it owes Defendant no duty to defend or indemnify in connection with the pending lawsuit filed by one Jane Doe against Defendant in the Superior Court of California, County of Kern, titled *Jane Doe v. Flyers Energy, LLC, et al.*, Case No. BCV-24-101783 (the "Underlying Lawsuit").

As a preliminary matter, the Court addresses Plaintiff's unopposed request for judicial notice. (Doc. 36). Therein, Plaintiff requests the Court take judicial notice of the following documents: 1) the complaint (Doc. 1); the insurance policy at issue (Doc. 1-1); the complaint in the Underlying Lawsuit (Doc. 1-2); the answer filed by Defendant in the Underlying Lawsuit (Doc. 36-1); and the answer filed by Defendant in this action (Doc. 33). (Doc. 36 at 2).

The Court takes judicial notice of the complaint (Doc. 1) and the answer (Doc. 33) as they were filed previously in the instant action, as well as the complaint (Doc. 1-2) and answer (Doc 36-1) filed in the Underlying Lawsuit.[1]

---

[1] The Court may take judicial notice of court records. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

4

1  Additionally, a court may consider certain materials without converting a motion for judgment on the pleadings into a motion for summary judgment, such as "documents attached to the complaint" and "documents incorporated by reference in the complaint." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Here, the complaint attaches and refers to the insurance policy (the "Policy") and the Policy is central to Plaintiff's claims.  Defendant did not object, neither in his answer nor during the hearing on the motion, to the authenticity of the copy of the Policy attached to the complaint.  As such, the Court takes judicial notice of the insurance policy (Doc. 1-1) for purposes of ruling on the pending motion.

### 1. Underlying Claims and Assertions

Plaintiff issued Defendant the Policy on October 13, 2022.  The Policy includes personal liability coverage.  (Doc. 1 at 3).  In the Underlying Lawsuit, Jane Doe asserts that she worked virtually with Defendant for Flyers Energy, LLC.  *Id.* at 5; (Doc. 1-2 at 4).  According to the allegations in the Underlying Lawsuit, on October 18, 2022, both Doe and Defendant attended a team-building event for their employer in Auburn, California, which took place at a bar.  Doe alleges that Defendant made unwanted physical advances toward her.  She states that, after the event, she felt lightheaded and lost consciousness, during which time Defendant brought her to his hotel room.  She provides that she was moving in and out of consciousness while Defendant sexually assaulted her.  (Doc. 1 at 6; Doc. 1-2 at 5-7).  Doe asserts that she filed a police report on October 19, 2022, and reported the incident to her employer, after which she took medical leave.  (Doc. 1 at 6; Doc. 1-2 at 7-8).  Defendant was terminated from his position at Flyers Energy, LLC, on November 8, 2022.  (Doc. 1 at 6; Doc. 1-2 at 8).

In the Underlying Lawsuit, Doe advances causes of action against Defendant for hostile work environment – sexual harassment, assault and battery, and violation of California Civil Code § 340.16 and § 1708.5.  (Doc. 1-2 at 9-26).  In his answer in the Underlying Lawsuit, Plaintiff generally denies the assertions within the complaint and includes 31 affirmative defenses, including (among others) consent, intervening superseding causes, voluntary conduct, no injury, and no causation, among numerous others.  (*See* Doc. 36-1).

In his answer to the complaint here, Defendant asserts the claims against him are solely civil

1  at this time and, as such, the "lack of criminal charges negates the application of [the Policy's]
2  exclusions related to criminal acts." Defendant asserts that the civil nature of the Underlying
3  Lawsuit requires Plaintiff to fulfill its defense obligation, due to the lack of criminal charges and
4  the Policy's "provisions covering liabilities arising from negligence." (Doc. 33 at 2).

### 2. Conflict of Law

In its pending motion, Plaintiff asserts that, "[w]here Safeco issued the policy to Mr. Pederson in Washington, Washington law arguably applies." (Doc. 35 at 13). Plaintiff states that, regardless, the Policy at issue does not provide coverage for the underlying lawsuit under either California or Washington law. *Id.* During the motion hearing before the undersigned, counsel for Plaintiff explained that Plaintiff included in its moving papers application of Washington law as an alternative and did not object to application of California law. Counsel further stated that Plaintiff's position was that California law applies here as the subject events took place within the state, the underlying lawsuit is pending within the state, the plaintiff in the underlying lawsuit is domiciled within the state, and no choice of law provision exists within the Policy. The Court agrees that the Policy does not evidence any choice-of-law provision. (*See* Doc. 1-1). Defendant, a citizen of Washington (Doc. 1 at 2), did not address choice of law in either an opposition brief or in response to the undersigned's questions during the motion hearing.

"A federal court sitting in diversity applies the conflict-of-law rules of the state in which it sits." *Sarver v. Chartier*, 813 F.3d 891, 897 (9th Cir. 2016). As this action is before this Court on the basis of diversity jurisdiction, California's choice-of-law rules apply. *Id.* The Ninth Circuit has noted that there are conflicting views among California courts regarding whether the state's choice-of-law rule for contracts is the "governmental interest test" or the statutory standard set forth in California Code of Civil Procedure § 1646. *See Arno v. Club Med Inc.*, 22 F.3d 1464, 1468 n.6 (9th Cir. 1994). Moreover, there appears to be a further split between courts in California regarding whether the first threshold step of a § 1646 analysis necessitates a comparison of the competing states' laws to confirm that they differ in a material way. *Cf. Fin. Indem. Co. v. Messick*, 606 F. Supp. 3d 996, 999 (E.D. Cal. 2022) (conducting a § 1646 analysis and finding California law applied without conducting any comparison of California and Colorado law), *with Madera Grp.,*

*LLC v. Mitsui Sumitomo Ins. USA, Inc.*, 545 F. Supp. 3d 820, 832 (C.D. Cal. 2021) (conducting a § 1646 analysis only after finding that New Jersey and California law differed in a material way). This matter may be further complicated by the fact that the first prong of the governmental interest test requires a court to, as a threshold matter, "determine whether the substantive laws of California and the foreign jurisdiction differ on the issue before it," whereas § 1646 includes no such prong. *Cooper v. Tokyo Elec. Power Co. Holdings*, 960 F.3d 549, 559 (9th Cir. 2020); *see* Cal. Civ. Code § 1646.

The Court need not further consider or resolve the conflict of laws issues given that, upon analysis of the operative states' law regarding duties to defend and indemnify pursuant to contract, there is no material difference between California and Washington law. As such, the Court's analysis would reach the same conclusions regardless of the law applied. The applicable law for each state is set forth below.

### 3. Duties to Defend and Indemnify – California Law

Pursuant to California law, "interpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exch., Inc.,* 11 Cal.4th 1, 18 (1995) (citing *AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807 (1990)). When analyzing the language of an insurance policy, the Court "should give the words used their plain and ordinary meaning, unless the policy clearly indicates to the contrary." *Giddings v. Industrial Indemnity Co.,* 112 Cal. App. 3d 213, 218 (1980). If a policy language is "clear and explicit, it governs." *Bank of the West v. Super. Ct.,* 2 Cal.4th 1254, 1264 (1992).

"An insurer has a very broad duty to defend its insured under California law." *Anthem Elecs. Inc. v. Pac. Employers Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002). "The California Supreme Court has stated that 'the insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy.'" *Id.* (quoting *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal.4th 287, 299 (1993) (emphasis in original)). In California, "once the insured has established potential liability by reference to the factual allegations of the complaint, the terms of the policy, and any extrinsic evidence upon which the

7

1  insured intends to rely, the insurer must assume its duty to defend unless and until it can
2  conclusively refute that potential." *Montrose*, 6 Cal.4th at 299. "Any doubt as to whether the
3  facts establish the existence of the defense duty must be resolved in the insured's favor." *Id*. at
4  299-300.

5  "The determination whether the insurer owes a duty to defend is usually made in the first
6  instance by comparing the allegations of the complaint with the terms of the policy." *Anthem*
7  *Elecs.*, 302 F.3d at 1054 (citing *Montrose*, 6 Cal.4th at 295). Facts extrinsic to the complaint may
8  trigger a duty to defend when they show that it is possible that the claim may be covered by the
9  policy. *Id.* The insurer must conduct a reasonable investigation into the circumstances of the
10 claim before denying coverage. *Id*. at 1054-55 (citing *Am. Int'l Bank v. Fidelity and Deposit Co.*,
11 49 Cal. App. 4th 1558, 1571 (1996)).

12 Under California law, an insurer's duty to defend is not synonymous with its duty to
13 indemnify its insured. *Certain Underwriters at Lloyd's of London v. Super. Ct.*, 24 Cal.4th, 945,
14 958 (2001). The duty to defend is broader than the duty to indemnify: the defense duty attaches
15 when a policy is ambiguous and the insured would "reasonably expect the insurer to defend him
16 or her against the suit based on the nature and kind of risk covered by the policy, or when the
17 underlying suit potentially seeks damages within the coverage of the policy." *Wesco Ins. Co. v.*
18 *Brad Ingram Construction*, No. 22-16584, 2024 WL 243344, at *2 (9th Cir. 2024) (quoting
19 *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal.4th 857, 869 (1998)).

20 "To prevail in an action seeking declaratory relief on the question of the duty to defend,
21 the insured must prove the existence of a *potential for coverage*, while the insurer must establish
22 *the absence of any such potential*. In other words, the insured need only show that the underlying
23 claim *may* fall within policy coverage; the insurer must prove that it *cannot*." *Delgado v.*
24 *Interinsurance Exch. of Auto. Club of S. Cal.*, 47 Cal.4th 302, 308 (2009) (internal citations and
25 quotations omitted) (emphasis in original). Interpretation of insurance policy language is a
26 question of law that properly may be decided on a motion for judgment on the pleadings. *See RLI*
27 *Ins. Co. v. City of Visalia*, 297 F. Supp. 3d 1038, 1047 (E.D. Cal. 2018), *aff'd*, 770 F. App'x 377
28 (9th Cir. 2019).

### 4.     Duties to Defend and Indemnify – Washington Law

"In Washington, insurance policies are construed as contracts. An insurance policy is construed as a whole, with the policy being given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wash.2d 654, 15 P.3d 115, 122 (2000) (quotations omitted). Any ambiguities are resolved in favor of the insured and against the insurer, and a clause is ambiguous when it is fairly susceptible to two different reasonable interpretations on its face. *Id.* If, however, the language is clear and unambiguous, a court may not alter the policy or create ambiguity where none existed prior, and must enforce the policy as it is written. *Pub. Util. Dist. No. 1 v. Int'l Ins. Co.*, 124 Wash.2d 789, 881 P. 2d 1020, 1025 (1994).

Pursuant to Washington law, "an insurer owes its insured two primary duties: the duty to indemnify and the duty to defend" and the duty to indemnify "only exists at the time liability is assessed, and only if the insurance policy covers the conduct giving rise to the liability. The duty to defend, on the other hand, is much broader, and is triggered at the time an action within the terms of the policy is initiated against the insured." *Osborne Constr. Co. v. Zurich Am. Ins. Co.*, 356 F. Supp. 3d 1085, 1091 (W.D. Wash. 2018) (citations omitted). The duty to defend is triggered "if the insurance policy conceivably covers allegations" against the insured. *Am. Best Food, Inc. v. Alea London, Ltd.,* 168 Wash.2d 398, 404 (2010), *as corrected on denial of reconsideration* (June 28, 2010). The allegations against the insured are "liberally construed" in favor of the duty to defend. *Id.*

The duty to defend "generally is determined from the 'eight corners' of the insurance contract and the underlying complaint." *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wash.2d 793, 803 (2014), *as corrected* (Aug. 6, 2014). The duty "arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Id.* at 802 (quotation omitted). "An insurer is not relieved of its duty to defend unless the claim alleged in the complaint is clearly not covered by the policy" and "if a complaint is ambiguous, a court will construe it liberally in favor of triggering the insurer's duty to defend." *Woo v. Fireman's Fund Ins. Co.*, 161 Wash.2d 43, 53 (2007). "[T]o determine whether

9

the duty to defend exists, this court examines the policy's insuring provisions to see if the complaint's allegations are conceivably covered. If covered, this court must then determine whether an exclusion clearly and unambiguously applies to bar coverage." *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wash.2d 55, 64 (2000). The interpretation of an insurance policy is an issue of law. *Schwindt v. Underwriters at Lloyd's of London*, 81 Wash. App. 293, 298 (1996). Courts should ordinarily "interpret insurance contracts as the average insurance purchaser would understand them and give undefined terms in these contracts their plain, ordinary and popular meaning." *Allstate Ins. Co. v. Raynor*, 143 Wash.2d 469, 476 (2001) (citations and quotations omitted).

When an insurer defends its policyholder, the duty ends if a court determines that there was no coverage. *Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wash.2d 872, 885 (2013). The insurer is not retroactively absolved from paying defense costs, but "[a]fter obtaining a declaration of noncoverage, an insurer will not be obligated to pay from that point forward." *Id.*

### 5. Analysis

In its motion, Plaintiff advances three independent grounds in support of its argument that it does not have a duty to defend and indemnify in the Underlying Lawsuit: 1) the Policy only provides coverage for accidental acts and not for deliberate or intentional acts; 2) the Policy specifically excludes coverage for bodily injury from sexual molestation; and 3) the Policy specifically excludes coverage for bodily injury arising out of business pursuits. (*See* Doc. 35).

#### a. The Policy

The Policy provides in relevant part:

> **COVERAGE E – PERSONAL LIABILITY**
>
> If a claim is made or suit is brought against any ***insured*** for damages because of ***bodily injury*** or ***property damage*** caused by an ***occurrence*** to which this coverage applies, we will:
> **1.** pay up to our limit of liability for the damages for which the ***insured*** is legally liable; and
> **2.** provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent …

(Doc. 1-1 at 32). The Policy provides the following exclusions:

> **1. Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply to ***bodily injury*** or ***property damage:***

10

>> **a.** which is expected or intended by any *insured* or which is the foreseeable result of an act or omission intended by any *insured*;
> **b.** arising out of the *business pursuits* of any *insured* or the rental or holding for rental of any part of any premises by any *insured*. This exclusion does not apply to:
>> **(1)** activities which are ordinarily incident to non-*business* pursuits except as excluded in **h.** below;
>
> …
> **i.** arising out of physical or mental abuse, sexual molestation or sexual harassment.
> …

*Id.* at 32-34. Additionally, effective October 13, 2022, the above provisions in the Policy were modified as follows:

> Item **1.a.** is deleted and replaced by:
> **a.** which:
> **(1)** is expected or intended by any *insured* or which is the foreseeable result of an act or omission intended by any *insured*; or
> …
> This exclusion applies even if:
> **(3)** such *insured* lacks the mental capacity to form intent;
> **(4)** such *bodily injury* or *property damage* is of a different kind or degree than expected or intended; or
> **(5)** such *bodily injury* or *property damage* is sustained by a different person, or persons, than expected or intended.

*Id.* at 15-16. The Policy provides the following definitions of its terms:

> **2.** "*Bodily injury*" means:
> **a.** bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom.
>
> *Bodily injury* does not include any communicable disease transmitted by any *insured* to any other person.
> …
> **(2)** coverage does not include:
> …
> **(d)** injury arising out of the *business* pursuits of any *insured*. This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by any *insured*; or
> …
> **(f)** *punitive damages* awarded against any *insured*.
> …
> **3.** "*Business*" includes trade, profession or occupation.

11

> **7.** "*Occurrence*" means an accident, including exposure to conditions which results in:
> **a.** *bodily injury*; or
> **b.** *property damage*;
> during the policy period. Repeated or continuous exposure to the same general conditions in considered to be one *occurrence*.

*Id.* at 39-41.

### b.  *"Occurrence" Under the Policy*

The express provisions of the Policy define an "occurrence" as an "accident." Additionally, the Policy states that bodily injury "which is expected or intended by any insured or which is the foreseeable result of an act or omission intended by any insured" is not covered. The operative, modified language sets forth that this exclusion applies even "if such insured lacks the mental capacity to form intent; such bodily injury or property damage is of a different kind or degree than expected or intended; or such bodily injury or property damage is sustained by a different person, or persons, than expected or intended." *Id.* at 15-16, 32-34 (emphasis and numbering omitted).

Because the Policy does not define the term "accident," the term must be given its plain meaning. *See, e.g., W. Nat. Assur. Co. v. Hecker*, 43 Wash. App. 816, 822, 719 P.2d 954, 958 (1986) ("The policy does not define 'accident.' Therefore, the term must be given its popular and ordinary meaning."). The Washington Supreme Court has held "that 'an accident' is an unusual, unexpected, and unforeseen happening." *Grange Ins. Co. v. Brosseau*, 113 Wash.2d 91, 95 (1989). Similarly, the California Supreme Court has held that "[i]n the context of liability insurance, an accident is an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." *Delgado*, 47 Cal. 4th at 308 (citation and quotations omitted).

"An accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death. The means as well as the result must be unforeseen, involuntary, unexpected and unusual." *Schorno v. State Farm Fire & Cas. Co.*, No. C09-5778 RBL, 2010 WL 3119449, at *5 (W.D. Wash. Aug. 3, 2010), *aff'd*, 445 F. App'x 956 (9th Cir. 2011) (citing *State Farm Fire & Cas. Co. v. Ham & Rye, LLC.*, 142 Wash. App. 6, 14-16, 174 P.3d 1175 (2007), and *Safeco Ins. Co. v. Butler*, 118 Wash.2d 383, 401, 823 P.2d 499 (1992)); *see Merced Mut. Ins. Co.*

12

1  *v. Mendez*, 213 Cal. App. 3d 41, 50 (1989) ("An accident … is never present when the insured
2  performs a deliberate act unless some additional, unexpected, independent, and unforeseen
3  happening occurs that produces the damage."). Accord *Merced Mut. Ins. Co. v. Mendez*, 213 Cal.
4  App. 3d 41, 50 (1989).

5  "[C]overage has been routinely denied to insureds for intentional acts as a matter of law,
6  even when the harm is unintended." *Schorno*, 2010 WL 3119449, at *5 (citing *Pacific Ins. Co. v.
7  Catholic Bishop of Spokane*, 450 F. Supp. 2d 1186, 1198 (E.D. Wash. 2006)). Accord *Mendez*,
8  213 Cal. App. 3d at 50 ("where the insured intended all of the acts that resulted in the victim's
9  injury, the event may not be deemed an 'accident' merely because the insured did not intend to
10 cause injury."). Relevant here, both Washington and California courts find that "[a]n insured's
11 deliberate act of intercourse with another is not an accident so long as the insured specifically
12 intended the act." *Schorno*, 2010 WL 3119449, at *5; *Mendez*, 213 Cal. App. 3d at 50

13 The assertions in the Underlying Lawsuit clearly provide Defendant's actions as deliberate
14 and intentional. Defendant provides no opposition to these facts as he did not oppose the motion
15 and he does not offer any argument that may be construed as an opposition in his answer herein
16 (Doc. 33), nor did he do so during the motion hearing. Defendant merely states that a criminal case
17 has not been filed against him. (*See* Doc. 33). However, that fact is irrelevant here. The question
18 before the Court is whether the Policy excludes coverage such that Plaintiff's duty to defend, and
19 its duty to indemnify, is not triggered.

20 As to the allegations in the Underlying Lawsuit, even if Defendant was found to lack the
21 mental capacity to form intent due to inebriation, for example, the language of the policy would
22 still hold that the events of the Underlying Lawsuit did not trigger the duty to defend, as they were
23 not an "accident" and, under the modified language, the mental capacity to form intent is not a
24 factor. (Doc. 1-1 at 15-16); *see Hecker*, 43 Wash. App. at 822 (finding that, where insured sexually
25 assaulted individual and claimed he had been drinking alcohol and smoking marijuana, the act of
26 intercourse was not a covered "occurrence" or "accident" under the applicable policy).

27 California courts are in agreement. The case of *Merced Mutual Insurance Company v.
28 Mendez* is instructive. There, the court affirmed summary judgment, finding that the insurer did

13

1  not have an obligation to defend or indemnify the insured in an action for damages caused by the
2  insured's acts of forcible oral copulation. "Mendez admits intentionally engaging in sexual activity
3  with Ms. Perry. This sexual activity, which Ms. Perry alleges occurred against her will, forms the
4  basis of her action against Mendez. All of the acts, the manner in which they were done, and the
5  objective accomplished occurred exactly as appellant intended. No additional, unexpected,
6  independent or unforeseen act occurred … because Mendez's conduct was calculated and
7  deliberate … it was not an 'accident' and thus not an 'occurrence' within the meaning of the policy
8  provision. Because the conduct was not an 'occurrence' the insurer has no duty to defend an action
9  arising out of this conduct." *Merced*, 213 Cal. App. 3d at 50. The court declined to "construe the
10 term 'accident' to include conduct constituting the crime of forcible oral copulation and/or assault
11 with intent to commit forcible oral copulation. We further are unable to posit any factual
12 construction where such conduct might be interpreted as accidentally occurring." *Id.* at 52.

13        Here, the Policy language is substantially similar to the language in *Merced. Id.* at 44 ("The
14 policy defines 'occurrence' as 'an accident, including exposure to conditions, which results, during
15 the policy period, in: [¶] a. bodily injury; or [¶] b. property damage.' The policy then excludes
16 coverage for: 'bodily injury or property damage: [¶] a. which is expected or intended by the
17 insured.'"). The Underlying Lawsuit involves allegations of sexual assault by Defendant against
18 Jane Doe. It is plain that, under both California and Washington law, such assertions cannot
19 describe "accidents" as required to fit an "occurrence" as set forth in the Policy. Thus, the
20 Underlying Lawsuit does not trigger Plaintiff's duty to defend nor its duty to indemnify as the acts
21 alleged therein are excluded from the Policy. *See Northland Ins. Co. v. Briones*, 81 Cal. App. 4th
22 796, 811 (2000), *as modified* (July 7, 2000) (collecting cases and finding that "the alleged acts of
23 Mr. Briones cannot be considered accidental … rape is intentional conduct … we find all of the
24 conduct alleged in the complaint is intentional sexual misconduct. It cannot be considered
25 accidental: An intentional act is not an 'accident' within the plain meaning of the word …
26 intentional actions are generally not occurrences, because they are not accidents.") (citations and
27 quotations omitted).

28        Additionally, the negligence claims in the Underlying Lawsuit are not brought against

Defendant but against Flyers Energy, LLC. (Doc. 1-2 at 27). Contrary to Defendant's assertion in his answer that the policy must cover civil liability from negligence (Doc. 33 at 2), if negligence claims were brought against Defendant and such claims arose from the same set of events alleged in the Underlying Lawsuit, Plaintiff would have no duty to defend or indemnify. *See Safeco Ins. Co. v. Thomas*, No. 13-CV-0170-AJB (MDD), 2013 WL 12123852, at *4 (S.D. Cal. Nov. 26, 2013) (finding coverage excluded because the allegations "contained in the Underlying Action are that Myles-Hendricks repeatedly sexually molested, battered, assaulted and raped plaintiff" and that, "[a]lthough the Underlying Action only asserts negligence against Thomas and Cross, it was Myles-Hendricks' act of sexual molestation that gave rise to those negligence claims.").

\* \* \* \* \*

As the events at issue here plainly were not an accident and, thus, not an occurrence under the Policy, Plaintiff has not duty to defend or indemnify Defendant in connection with the Underlying Lawsuit. As such, the Court need not address the other independent grounds advanced by Plaintiff in support of its motion for judgment on the pleadings.

## IV. CONCLUSION AND RECOMMENDATIONS

For the reasons set forth above, IT IS HEREBY ORDERED that Plaintiff's request for judicial notice (Doc. 36) is GRANTED.

And IT IS HEREBY RECOMMENDED that Plaintiff's motion for judgment on the pleadings (Doc. 35) be GRANTED and that a declaratory judgment be entered in Plaintiff's favor that Plaintiff does not owe Defendant a duty to defend or indemnity in connection with the Underlying Lawsuit.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the

record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **July 2, 2025**

UNITED STATES MAGISTRATE JUDGE